IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CHARLES RUDOLPH,<br><br>Plaintiff,<br><br>vs.<br><br>TOPSIDER BUILDING SYSTEMS, INC., a North Carolina corporation, et al,<br><br>Defendants. | ) | CIVIL NO. 07-00225 SOM-BMK<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS BASED ON PERSONAL JURISDICTION PRINCIPLES |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS
BASED ON PERSONAL JURISDICTION PRINCIPLES

I. INTRODUCTION.

This diversity action arises out of an agreement between Topsider Building Systems and Charles Rudolph. Topsider, a North Carolina company, agreed to supply Rudolph, previously a resident of North Dakota and now a citizen of California, with prefabricated components so that Rudolph could build a house in Hilo, Hawaii. Rudolph filed this action on April 30, 2007. Topsider moves to dismiss the Complaint, claiming that the court lacks personal jurisdiction over it. That motion is denied, as Rudolph has made a prima facie showing that this court has specific jurisdiction over Topsider with respect to the claims alleged in the Complaint.[1]

[1]Topsider is reminded that it must comply with the minimum font size requirements for all future filings with this court. Local Rule 10.2(a) requires a minimum font size that is applicable to both the text and footnotes. The font size used in Topsider's footnotes was too small.

## II. LEGAL STANDARD FOR A MOTION TO DISMISS BASED ON AN ALLEGED LACK OF PERSONAL JURISDICTION.

A plaintiff has the burden of establishing personal jurisdiction over a nonresident defendant. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004); Ziegler v. Indian River County, 64 F.3d 470, 473 (9th Cir. 1995); Flynt Distrib. Co. v. Harvey, 734 F.2d 1389, 1392 (9th Cir. 1984). A plaintiff must establish personal jurisdiction over a defendant with respect to each claim. Action Embroidery Corp. v. Atl. Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant." (citing Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir. 1977)).

When, as here, a district court acts on a motion to dismiss without holding an evidentiary hearing, a plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Schwarzenegger, 374 F.3d at 800; Ziegler, 64 F.3d at 473; Flynt, 734 F.2d at 1392. Although a plaintiff may not simply rest on the bare allegations of the complaint, uncontroverted allegations in the complaint must be taken as true, and conflicts between parties over statements contained in affidavits or declarations must be resolved in the plaintiff's favor. See Schwarzenegger, 374 F.3d at 800. If a plaintiff makes such a prima facie showing on a motion to dismiss, the plaintiff must eventually establish the

jurisdictional facts by a preponderance of the evidence at either a preliminary hearing or a trial. Flynt, 734 F.2d at 1392.

If the defendant presents evidence to contradict the allegations in the complaint, the plaintiff must go beyond the pleadings and present affirmative proof of personal jurisdiction through affidavits and/or declarations. See AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996), as supplemented by 1996 WL 490789 (9th Cir. Aug. 28, 1996).

## III. ANALYSIS OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir.) (en banc), cert. denied, 126 S. Ct. 2332 (2006). This court considers two factors before exercising personal jurisdiction over a nonresident defendant in a diversity of citizenship case: "1) whether an applicable state rule or statute potentially confers jurisdiction over the defendant; and (2) whether assertion of such jurisdiction accords with constitutional principles of due process." Flynt, 734 F.2d at 1392; Miracle v. N.Y.P. Holdings, Inc., 87 F. Supp. 2d 1060, 1064 (D. Haw. 2000). The "jurisdictional inquiries under state law and federal due process merge into one analysis" when, as here, the state's long-arm statute is "co-extensive with federal due

process requirements," as Hawaii's is. See Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991); Cowen v. First Ins. Co. of Haw., 61 Haw. 644, 649, 608 P.2d 394, 399 (1980) (Hawaii's long-arm statute, Haw. Rev. Stat. § 634-35, was adopted to expand the jurisdiction of Hawaii's courts to the extent permitted by the due process clause of the Fourteenth Amendment); see also Yahoo!, 433 F.3d at 1205 ("Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."); Schwarzenegger, 374 F.3d at 800-01 (same). Accordingly, personal jurisdiction over Topsider depends on federal due process requirements.

The Due Process Clause of the United States Constitution protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)). The Due Process Clause requires Topsider to have "certain minimum contacts with [Hawaii] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe, 326 U.S. at 316; Data Disc, 557 F.2d at 1287. To have the required minimum contacts, Topsider must have acted and had a connection with Hawaii in a manner that should

have led it to "reasonably anticipate being haled into court" in Hawaii. See Sher v. Johnson, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Requiring "minimum contacts" performs two functions. "It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States[,] through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." World-Wide Volkswagen, 444 U.S. at 292.

In applying the requirements of the Due Process Clause, courts have created two jurisdictional concepts--general and specific jurisdiction.

A. General Jurisdiction.

A court may exercise general jurisdiction over a defendant when the defendant is a resident or domiciliary of the forum state, or the defendant's contacts with the forum state are continuous, systematic, and substantial. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984); Schwarzenegger, 374 F.3d at 801 ("the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state" (quotations and citations omitted)); Data Disc, 557 F.2d at 1287 ("If the nonresident defendant's activities within a state are

'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities.").

As Rudolph has not shown that Topsider's contacts with Hawaii are continuous, systematic, and substantial, Rudolph has not demonstrated general jurisdiction over Topsider. At best, Rudolph argues that Topsider has sold its components nationally, including in Hawaii. However, Topsider has indicated that, in the past twenty years, it made less than one-dozen sales of components for homes in Hawaii. See Affidavit of Sheldon J. Storer (June 11, 2007) ¶ 20. Topsider says that it does not advertise directly in, market to, or solicit business from people in Hawaii, that it does not own property in or maintain an office in Hawaii, and that it does not have any employees, sales agents, or distributors in Hawaii. Id. ¶¶ 17-19. Examining all of the circumstances in the record, this court concludes that Rudolph has not established this court's general jurisdiction over Topsider.

B. Specific Jurisdiction.

Specific jurisdiction may be found when the cause of action arises out of a defendant's contact with or activities in the forum state. See Roth, 942 F.2d at 620; Data Disc, 557 F.2d

at 1287. The exercise of specific jurisdiction is consistent with due process only under the following conditions:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Yahoo!, 433 F.3d at 1205-06; Schwarzenegger, 374 F.3d at 802. Rudolph bears the burden of satisfying the first two prongs of this test. If Rudolph satisfies both of those prongs, the burden then shifts to Topsider to "present a compelling case" that the exercise of jurisdiction would not be reasonable. Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp., 471 U.S. at 477).

1. Purposeful Availment.

The purposeful availment requirement protects a defendant from being haled into a jurisdiction merely because of random, fortuitous, or attenuated contacts with the jurisdiction, or because of the unilateral activity of a third person. Burger King, 471 U.S. at 475. Jurisdiction is proper when "the contacts proximately result from actions by the defendant *himself* that

create a ‘substantial connection’ with the forum state.” Id. (quoting McGee v. Int’l Life Ins. Co., 355 U.S. 220, 223 (1957)).

In examining the purposeful availment requirement, this court analyzes “whether the defendant’s contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff.” Roth, 942 F.2d at 621; see also Gray & Co. v. Firstenberg Mach., Co., 913 F.2d 758, 760 (9th Cir. 1990). However, the defendant need not have been physically present or have had physical contact with the forum state, so long as the defendant’s efforts were “purposefully directed” toward a forum resident. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).

In cases arising out of contractual relationships, even if some claims sound in tort, courts analyze purposeful availment by looking at “prior negotiations and contemplated future consequences, along with the terms of the contract and the parties’ actual course of dealing.” Burger King, 471 U.S. at 479; Sher, 911 F.2d at 1362; McDevitt v. Guenther, 2006 WL 2092385, *5 (D. Haw. July 25, 2006). Here, Rudolph’s claims (even though some sound in tort) arise out of his alleged contractual relationship with Topsider.[2]

---

[2]Contract and tort cases are treated differently under the purposeful availment analysis in the Ninth Circuit. Yahoo!, 433 F.3d at 1206; Roth, 942 F.2d at 621. In tort cases, the

A contract with an effect in the forum state does not, by itself, automatically establish the minimum contacts necessary for the exercise of personal jurisdiction over a nonresident defendant. Burger King, 471 U.S. at 478. Instead, a court must examine the circumstances surrounding the contract in determining whether there have been the required minimum contacts. Accordingly, this court examines "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." See id. at 479. "Parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 473 (quoting Travelers Heath Ass'n v. Virginia, 339 U.S. 643, 647 (1950)).

Topsider argues that it did not purposefully avail itself of the laws of Hawaii. It says that the contract was negotiated in North Carolina and payment and delivery occurred in North Carolina. The court disagrees.

---

purposeful availment prong of the test is examined under the "effects" test. Roth, 942 F.2d at 621; Resnick, 283 F. Supp. 2d at 1139. The test is satisfied if the defendant is alleged to have 1) committed an intentional act; 2) expressly aimed at the forum state; and 3) causing harm that the defendant knows is likely to be suffered in the forum state. Resnick, 283 F. Supp. 2d at 1486. The court notes that, for the reasons set forth in this order, this effects test would be satisfied with respect to Rudolph's negligence claim.

Topsider says that delivery was "F.O.B." or "Free on Board" North Carolina. In an "F.O.B." contract, "[t]he seller's delivery is complete (and the risk of loss passes to the buyer) when the goods pass the transporter's rail." Black's Law Dictionary 690 (8th ed. 2004). Topsider says its obligations ended in North Carolina, when it delivered the components for the house to the shipping company. But agreeing to delivery F.O.B. North Carolina does not negate purposeful availment of the laws of Hawaii. See Benitez-Allende v. Alcan Aluminio Do Brasil, S.A., 857 F.2d 26, 30 (1st Cir. 1988) ("a truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings"); Hewlett-Packard Co. v. ICL Network Solutions (HK), Ltd., 2005 WL 3728713, *5 (D. Mass. Nov. 29, 2005) (finding that a defendant's contacts with Massachusetts were sufficient to make it reasonably foreseeable that the defendant would be haled into court in Massachusetts for business transactions in which title to property passed out-of-state).

Lucerne Farms v. Baling Technologies, Inc., 226 F. Supp. 2d 255 (D. Me. 2002), is particularly instructive. In Lucerne, a Maine corporation negotiated with a New York corporation for the purchase of a reconditioned baler, communicating by telephone approximately 50 times. The contract the parties entered into required the Maine corporation to pay

the New York corporation $49,000. In return, the New York corporation was to deliver the Baler "F.O.B. Honeoye, New York." The New York corporation agreed to provide two days of start-up assistance to the Maine corporation in Maine and warranted the baler's parts for thirty days. When the baler was installed in Maine, it did not work. The New York corporation's representatives then attempted to fix the baler, replacing multiple parts under the parts warranty. Id. at 257-58. When the New York corporation was unable to get the baler to work, the Maine corporation sued the New York corporation in Maine. The New York corporation moved to dismiss the complaint based on a lack of personal jurisdiction. The Maine court denied that motion. The court ruled that the New York company had sufficient minimum contacts with Maine based on the extensive negotiations between the Defendant and the Maine plaintiff, the thirty-day warranty and start-up assistance, as well as the "significant shipment of goods into Maine F.O.B." Id. at 259. These contacts were sufficient for the court to rule that the New York corporation purposefully availed itself of Maine's laws such that litigation in Maine was foreseeable. Id. at 260.

Topsider has not requested an evidentiary hearing on its motion, and Rudolph need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. See Schwarzenegger, 374 F.3d at 800; Ziegler, 64 F.3d at 473; Flynt,

734 F.2d at 1392. In the present case, although there were no negotiations in Hawaii, there are sufficient facts indicating that Topsider purposefully availed itself of the laws of Hawaii. There is no dispute that Topsider knew its materials were being sent to Hawaii or that Rudolph intended to use the materials to build a house in Hawaii. Declaration of Charles Rudolph, M.D. (July 4, 2007) ¶¶ 14, 18, 19, 20; Aff. of Sheldon J. Storer (June 11, 2007) ¶ 16. Rudolph could have directed the shipping company to reroute the unassembled parts to another state, but Topsider's discussions with Rudolph concerned the building of a house in Hawaii, not some other location. Moreover, Topsider shipped the parts for Rudolph's home in six shipments, beginning on June 23, 2003. See Storer Aff. ¶ 40. The first shipment reached Hilo, Hawaii, on July 16, 2003, months before Topsider shipped the next two shipments on December 12, 2003, and January 2, 2004, respectively. Id. ¶¶ 41, 46. Topsider says that it shipped the final three shipments on June 17, 2004, September 9, 2004, and January 25, 2005, after construction had actually begun on the home. Id. ¶ 49. The first shipment's destination was a strong indication to Topsider that the following shipments would actually go to Hawaii.

The contract provided a thirty-day limited warranty "that all structures, components, materials, and products purchased from [Topsider] shall be free from defects in material

or workmanship . . . from the date of [Rudolph's] receipt of the Home." See Ex. 6 (Sales Agreement) at 2. In August 2004, Topsider "offered to assist in trouble-shooting problems Rudolph reported having in the assembly of the Home, and offered to advance costs . . . to repair or replace the structural members." Storer Aff. ¶ 53. Clearly, Topsider contemplated future consequences in Hawaii arising out of the contract for the sale of the home. Given these alleged facts, Topsider purposefully availed itself of the laws of Hawaii, despite shipping the parts for the home F.O.B. North Carolina. See Luv n' care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 471-72 (5th Cir.) ("we conclude that a F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper"), cert. denied, 126 S. Ct 2968 (2006).

2. Arising out of Forum-Related Activities.

The second requirement for specific jurisdiction is that Rudolph's claims arise out of Topsider's forum-related activities. See Panavision, 141 F.3d at 1322. The court must determine whether Rudolph would not have been injured "but for" Topsider's alleged conduct directed toward Rudolph in Hawaii. See id. This requirement is satisfied. "But for" Topsider's alleged shipment of defective products or products that

deteriorated before Rudolph used the components to build his house in Hawaii, Rudolph would not have suffered the alleged injuries.

3. Reasonableness of Exercise of Jurisdiction.

Even if a plaintiff satisfies the first two requirements for personal jurisdiction over a defendant, jurisdiction may not be exercised if Topsider presents a compelling case that exercise of jurisdiction would be unreasonable. See Schwarzenegger, 374 F.3d at 802. In determining reasonableness, the court considers: (1) the extent of purposeful interjection into the forum state; (2) the burden on the defendant; (3) the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in the suit; (5) the most efficient judicial resolution of the dispute; (6) the convenience and effectiveness of relief for the plaintiff; and (7) the existence of an alternative forum. Burger King, 471 U.S. at 475; Ziegler, 64 F.3d at 475. None of these seven factors is dispositive. Instead, all seven factors must be balanced. Ziegler, 64 F.3d at 475.

a. Purposeful Interjection.

The first factor the court examines is the extent of Topsider's purposeful interjection into Hawaii. "Even if there is sufficient 'interjection' into the state to satisfy the purposeful availment prong, the degree of interjection is a

factor to be weighed in assessing the overall reasonableness of jurisdiction under the reasonableness prong." Panavision, 141 F.3d at 1323 (quoting Core-Vent, 11 F.3d at 1488); but see Roth, 942 F.2d at 623 ("In light of the first prong of purposeful availment, analysis of this first factor in the third prong would be redundant.").

Topsider allegedly entered into a contract and/or committed torts that contemplated future conduct in Hawaii. While the degree of intrusion into Hawaii may not have been great, this court has enough before it to conclude that this factor weighs in Rudolph's favor.

b. Topsider's Burden in Litigating.

In examining the second factor (the litigation burden), the court's primary concern is the defendant's burden. See F.D.I.C. v. British-Am. Ins. Co., 828 F.2d 1439, 1444 (9th Cir. 1987). Topsider will be burdened with defending this action thousands of miles from North Carolina, its place of incorporation. However, "unless the inconvenience [to Topsider of litigating in Hawaii] is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." See Panavision, 141 F.3d at 1333 (internal quotation omitted). The inconvenience of litigating in Hawaii clearly does not amount to a deprivation of due process. See Miracle, 87 F. Supp. 2d at

1069 (finding that requiring New York defendants and their potential witnesses to travel to Hawaii was not a deprivation of due process). In this "era of fax machines and discount air travel, requiring [Topsider] to litigate in [Hawaii] is not constitutionally unreasonable." Panavision, 141 F.3d at 1323. At best, this factor weighs only slightly in favor of finding litigation in Hawaii unreasonable.

c. Conflict With Sovereignty of North Carolina.

The court also considers the extent to which its exercise of jurisdiction in Hawaii would conflict with the sovereignty of North Carolina, Topsider's home. There has been no demonstration of any actual conflict with the sovereignty of North Carolina. See Pac. Fisheries, 2000 WL 1670917, at *10 (D. Haw. Oct. 17, 2000); United Kingdom Mut. S.S. Assurance Ass'n v. Cont'l Maritime of San Francisco, Inc., 1992 W.L. 486937, at *5 (N.D. Cal. Aug. 31, 1992) (stating that, because the court found no conflict between Canadian law and U.S. law, this factor weighed in favor of the exercise of specific jurisdiction). At best, Topsider argues that North Carolina has an interest in enforcing the laws applicable to corporations formed under North Carolina law and in protecting and regulating North Carolina companies. If this is a factor in Topsider's favor, it is only slightly so.

d. Forum State's Interest.

The fourth factor--Hawaii's interest in this dispute--is neutral. Hawaii has a "strong interest in providing an effective means of redress for its residents who are tortiously injured." Miracle, 87 F. Supp. 2d at 1070. However, Rudolph is not a Hawaii resident.

e. Efficient Resolution.

The fifth factor--efficient judicial resolution of the controversy--focuses on the location of the evidence and witnesses. Panavision, 141 F.3d at 1323-24. This factor "is no longer weighed heavily given the modern advances in communication and transportation." Id. With witnesses and evidence located in both Hawaii and North Carolina, this factor is neutral.

f. Convenient and Effective Relief for Plaintiff.

Because Rudolph is a California citizen, it would appear that North Carolina would be as convenient a forum as Hawaii for Rudolph. However, because Rudolph's witnesses appear to be located in Hawaii, Hawaii may be slightly more convenient for Rudolph than North Carolina. This factor therefore weighs slightly in favor of the exercise of jurisdiction.

g. Alternative Forum.

Rudolph bears the burden of proving the unavailability of an alternative forum. See Core-Vent, 11 F.3d at 1490. Rudolph has not demonstrated the unavailability of such an alternative forum. Accordingly, this factor weighs in favor of Topsider.

h. Balancing and Applying the Factors.

Topsider has failed to demonstrate a compelling case that jurisdiction would be unreasonable. The seventh factor (unavailability of alternate forum) weighs in favor of unreasonableness, and the second factor (litigation burden) and third factor (North Carolina sovereignty) weigh, at best, only slightly in favor of unreasonableness. The first factor (purposeful interjection) and sixth factor (convenient and effective relief for the plaintiff) favor Rudolph, with the fourth factor (Hawaii’s interest) and fifth factor (efficient resolution) being neutral. Given the absence of a compelling case of unreasonableness, the seven factors, weighed together, do not suggest that jurisdiction is unreasonable. See Burger King, 471 U.S. at 477.

C. Chapter 480 Claim.

In footnote 15 on page 20 of Topsider’s motion to dismiss, Topsider argues that this court should decline to exercise supplemental jurisdiction over Rudolph’s chapter 480

unfair and deceptive practices claim because this court lacks diversity jurisdiction. This argument confuses the concepts of personal and diversity jurisdiction. Personal jurisdiction examines whether a defendant has minimum contacts with the forum state to determine whether the exercise of jurisdiction would be reasonable. Diversity jurisdiction, on the other hand, examines whether the parties are diverse and whether the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332. On the present record, this court sees no reason to question whether it has diversity jurisdiction. This court applies the personal jurisdiction analysis above to Rudolph's chapter 480 claim and exercises personal jurisdiction. See McDevitt, 2006 WL 2092385, *5 (applying personal jurisdiction analysis applicable to claims arising out of a contractual relationship to a chapter 480 claim).

IV. CONCLUSION.

Because Rudolph has met his burden on this motion of making a prima facie showing of specific jurisdiction over Topsider with respect to the claims alleged in the Complaint, the

court denies Topsider's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 24, 2007.




/s/ Susan Oki Mollway
_________________________________
Susan Oki Mollway
United States District Judge

Rudolph v. Topsider Building Systems, Civ. No. 07-00225 SOM/BMK; ORDER DENYING DEFENDANT'S MOTION TO DISMISS BASED ON PERSONAL JURISDICTION PRINCIPLES