```
                IN THE UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF HAWAII

CHARLES RUDOLPH,                  )   CIVIL NO. 07-00225 SOM-BMK
                                  )
          Plaintiff,              )
                                  )   ORDER DENYING PLAINTIFF CHARLES
     vs.                          )   RUDOLPH'S MOTION TO ENFORCE
                                  )   ORDER AND JUDGMENT; ORDER
TOPSIDER BUILDING SYSTEMS,        )   DENYING PLAINTIFF CHARLES
INC., a North Carolina            )   RUDOLPH'S MOTION TO HOLD
corporation, et al,               )   DEFENDANT TOPSIDER BUILDING
                                  )   SYSTEMS IN CONTEMPT OF COURT
          Defendants.             )
_____ )
```

ORDER DENYING PLAINTIFF CHARLES RUDOLPH'S MOTION TO ENFORCE ORDER
AND JUDGMENT; ORDER DENYING PLAINTIFF CHARLES RUDOLPH'S MOTION TO
 HOLD DEFENDANT TOPSIDER BUILDING SYSTEMS IN CONTEMPT OF COURT

I.    INTRODUCTION.

      On April 7, 2007, Plaintiff Charles Rudolph filed a Complaint in this court. Rudolph claimed that Defendant Topsider Building Systems, Inc., a North Carolina company, breached its agreement to supply Rudolph with prefabricated components for a house Rudolph built in Hilo, Hawaii. Rudolph sought to have the alternative dispute resolution ("ADR") requirements in his agreements with Topsider declared unconscionable and asked this court to determine that he need not proceed with the American Arbitration Association ("AAA") arbitration in North Carolina that Topsider had already initiated.

      On July 26, 2007, this court dismissed Rudolph's Complaint, determining that the ADR provisions in his agreements with Topsider were not unconscionable and that Rudolph had failed

to follow those provisions before filing his Complaint in this court.  See Order Compelling Compliance with Dispute Resolution Provisions of the Sales Agreement and Design Services Agreement; Order Dismissing Complaint (July 26, 2007).  The court determined that, to resolve their dispute, the parties had to go through the escalating alternative dispute techniques set forth in their agreements--1) informal discussion; 2) conciliation; 3) mediation; and 4) arbitration.  The court compelled compliance with the ADR provisions.  See id.  Judgment in favor of Topsider was entered on July 27, 2007.  See Judgment (July 27, 2007).

On February 7, 2008, Rudolph filed what he called a motion to enforce this court's July 26, 2007, order and subsequent judgment, asking this court to hold Topsider in contempt.  Rudolph says that the arbitration currently set for April 21, 2008, should be stopped because Topsider has refused to participate in what should have been precursor conciliation and mediation proceedings.  The court denies Rudolph's motions.  Despite the titles he gives his motions, Rudolph is not really seeking enforcement of this court's order or judgment.  Instead, he is challenging an order by the North Carolina arbitrator.  This court has no jurisdiction to review the arbitrator's ruling.

II.     BACKGROUND FACTS.

Before this court issued its order of July 26, 2007, which stated that Rudolph had improperly filed this action and

which ordered the parties to engage in the progressive ADR proceedings set forth in their agreements, Rudolph had filed a motion to dismiss the North Carolina AAA arbitration, arguing that the parties had to conduct conciliation and then mediation before resorting to arbitration. See Declaration of Richard J. Kowen (Feb. 7, 2008) ¶ 16. On September 26, 2007, the arbitrator in the matter, James C. Smith, denied that motion. See Order (Sept. 26, 2007) (Ex. M). Declining to dismiss the arbitration, the arbitrator ordered the parties to conduct conciliation by 5:00 p.m. Eastern Standard Time on Friday, November 2, 2007, and to mediate by 5:00 p.m. Eastern Standard Time on Friday, December 14, 2007. The arbitrator ruled that failure to conduct conciliation and/or mediation by those dates would be deemed a waiver of the conciliation and mediation provisions. Id.

On September 26, 2007, the day of the arbitrator's order, counsel for Topsider sent an email to the AAA Case Manager, Christina Dowse, with a copy to Rudolph's counsel, asking for a "roster of AAA-vetted Neutrals who might be available to conduct conciliation within the next six weeks." See Email from Marc. H. Eppley to Christina Dowse (Sept. 26, 2007) (Ex. N).

On September 28, 2007, the AAA Case Manager emailed counsel for both parties. The email stated, "The Association would like comments in writing from the Respondent [Rudolph] concerning Conciliation. Whether the respondent agrees to

participate and if both parties would like the AAA to provide a neutral or if both parties would prefer a list of AAA neutrals to conduct the conciliation." See Email from Christina Dowse to Marc H. Eppley and Alan H. Tuhy (Sept. 28, 2007).

Counsel for Rudolph says that, about a month later, on October 22, 2007, at an arbitration scheduling conference, he indicated that Rudolph was willing to engage in conciliation and mediation but did not want to use AAA for those proceedings. Declaration of Richard J. Kowen (March 7, 2008) ("Kowen Decl. II") ¶ 5.

On October 24, 2007, the parties discussed mediation. After that discussion, counsel for Rudolph was supposed to have initiated another phone call about mediation. Counsel for Topsider memorialized that conversation in a letter, noting "that the metaphoric ball will remain in your [Rudolph's] court." See Letter from Marc H. Eppley to Richard J. Kowen and Alan Tuhy (Oct. 24, 2007) (Ex. P). Five days later, counsel for Topsider sent another letter to counsel for Rudolph, noting that he had not received the phone call from Rudolph's counsel to discuss ADR. The letter insinuated that, with each passing day, it was becoming clearer that Rudolph had never been interested in conciliation. See Letter from Marc. H. Eppley to Richard J. Kowen and Alan Tuhy (Oct. 29, 2007) (Ex. Q).

The parties did not conduct conciliation before the Arbitrator's November 2, 2007, deadline. See Kowen Decl. ¶ 25 ("To date, the Parties have not satisfied the conditions precedent, including participating in conciliation and mediation, in order to invoke arbitration under the ADR provision contained in the Parties' Agreements.").

On December 11, 2007, just three days before the arbitrator's mediation deadline, counsel for Rudolph says that he indicated at a deposition that Rudolph was ready to conciliate or mediate his dispute with Topsider. See Deposition of Charles Nicholas Rudolph, M.D. (Dec. 11, 2007) at 162-63. Counsel for Rudolph says that, later that day, he asked counsel for Topsider to engage in mediation. See Kowen Decl. ¶ 21. Counsel for Rudolph says that counsel for Topsider declined to engage in mediation at that time. Kowen Decl. ¶ 21.

Counsel for Topsider disputes Rudolph's counsel's recitation of the facts following the deposition. Counsel for Topsider says that, following the deposition, he immediately left for the airport and did not discuss ADR any more that day. See Eppley Decl. ¶ 54. Counsel for Topsider says that, on December 13, 2007, he called counsel for Rudolph and left a message asking about ADR. Id. ¶ 56. Counsel for Topsider says that he called counsel for Rudolph again at 3:01 p.m. EST on December 14, 2007, about two hours before the arbitrator's mediation deadline. Id.

5

¶ 57. Counsel for Topsider says that, during that December 14 call, counsel for Rudolph suggested that his client might be interested in mediation. Id. ¶ 60; see also Email from Marc Eppley to Michael Lam (Dec. 15, 2007) ("Kowen offered to mediate today--it was 3:00 p.m. on the last day to complete mediation per Smith's order, and I was already swallowed by discovery.") (Ex. Y). Counsel for Topsider characterized this suggestion of interest in ADR as being another 23$^d$-hour attempt to delay the arbitration. Eppley Decl. ¶ 61. A few minutes later, counsel for Topsider again called counsel for Rudolph to say that Topsider remained open to good-faith settlement discussions. Id. ¶ 62. Counsel for Rudolph says that counsel for Topsider is mistaken in thinking that the discussions about mediation occurred on December 14, rather than December 11, 2007. Kowen Decl. II ¶¶ 6, 13.

On February 7, 2008, the AAA arbitration in North Carolina was continued from February 12, 2008, until April 21, 2008. Kowen Decl. ¶ 24; Order Continuing Arbitration Hearing (Feb. 7, 2008).

III.     ANALYSIS.

In essence, Rudolph asks this court to rule that Topsider has improperly refused to engage in conciliation and mediation, as required by their agreements and ordered by this court. Rudolph asks this court to enforce its order and subsequent judgment and to hold Topsider in contempt. Under the

circumstances, the court declines to hold Topsider in contempt and declines to "enforce" its order and/or judgment.

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." Shillitani v. United States, 384 U.S. 364, 370 (1966); accord United States v. Yacoubian, 24 F.3d 1, 5 (9th Cir. 1994). This court also has the inherent power to enforce a judgment it enters. See Fed. Sav. & Loan Ins. Corp. v. Ferrante, 364 F.3d 1037, 1040 n.1 (9th Cir. 2004)

This court issued its order dismissing this case and compelling compliance with the parties' ADR agreements on July 26, 2007. Judgment was entered the next day. Two months later, on September 26, 2007, the arbitrator issued his order denying Rudolph's motion to dismiss and ordering that the parties engage in conciliation no later than November 2, 2007, and mediation no later than December 14, 2007. If conciliation and mediation were not completed by those dates, the arbitrator ruled, the conciliation and mediation prerequisites to arbitration would be deemed waived. See Order (Sept. 26, 2007). Although Rudolph characterizes his motion as one to enforce this court's order and judgment, it is really a challenge to the AAA arbitrator's September 26, 2007, order.

Topsider may have refused to participate in mediation requested by Rudolph, but that refusal must be put in context. It

7

either occurred in the last two hours before the arbitrator's mediation deadline of December 14, 2007, or three days before that deadline, and after Topsider had repeatedly tried to discuss conciliation and mediation with Rudolph.

On September 26, the day the arbitrator issued his order, counsel for Topsider began the process of looking for a conciliator. Two days after that, on September 28, 2007, the AAA Case Manager asked Rudolph whether he would agree to participate in conciliation. On October 22, 2007, nearly a month later and only 11 days before the arbitrator's conciliation deadline, Rudolph indicated that he was interested in participating in conciliation and mediation. Two days later, on October 24, 2007, the parties left it to Rudolph to initiate a phone call about mediation. Five days after that, on October 29, 2007, counsel for Topsider sent a letter to counsel for Rudolph insinuating that Rudolph was not actually interested in conciliation. Conciliation did not occur before the arbitrator's conciliation deadline of November 2, 2007. Either three days before the arbitrator's mediation deadline or only two hours before that deadline, Rudolph offered to mediate the dispute. Counsel for Topsider refused to agree to mediation right before the deadline, believing that Rudolph was merely trying to delay the arbitration without having seriously attempted to conduct either conciliation or mediation in the five months since this court issued its order.

In footnote 1 on page 18 of this court's July 26, 2007, order, this court noted that it was up to the arbitrator to decide whether arbitration was or was not permissible.  The arbitrator decided that, although the parties' agreements called for escalating ADR, it was not necessary for the parties to actually conduct conciliation or mediation before going to arbitration.  Instead, the arbitrator ruled that the conciliation and mediation requirements would be deemed waived by the parties if not conducted by certain dates.  Rudolph argues that the arbitrator exceeded his authority in issuing those deadlines because he changed the parties' agreements.  Rudolph therefore asks this court to order Topsider to participate in conciliation and mediation before arbitrating the matter next month.  In essence, Rudolph wants this court to overrule the arbitrator.  This court will not sit to review the North Carolina arbitrator's pre-arbitration order refusing to dismiss the arbitration.  If Rudolph wants to advance his argument that the arbitrator exceeded his authority, that cannot occur at this time.  See 9 U.S.C. § 10(a)(4) ("In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration . . . (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.").  Such

court action must occur only after a final award is made by the arbitrator. See Folse v. Richard Wolf Med. Instruments Corp., 56 F.3d 603, 606 (5th Cir. 1995) ("§ 10 authorizes court action only after a final award is made by the arbitrator").

This court recognized the arbitrator's authority to determine whether or not to dismiss the arbitration proceeding based on the parties' compliance or noncompliance with the ADR provisions. This court will not now "enforce" its order and/or judgment and tell the arbitrator something different, especially when Rudolph has not diligently pursued conciliation or mediation following the arbitrator's order of September 26, 2007. Given the circumstances, this court also declines to hold Topsider in contempt of court for its actions.

IV.      CONCLUSION.

For the foregoing reasons, the court denies Rudolph's motion to compel Topsider to comply with the ADR provisions as discussed in this court's order of July 26, 2007, and the judgment entered on July 27, 2007. The court issues this ruling without a hearing pursuant to Local Rule 7.2(d). The court also declines to

hold Topsider in contempt of court.  Each party will bear its own fees and costs with respect to this matter.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 17, 2008.



　/s/ Susan Oki Mollway　
Susan Oki Mollway
United States District Judge

Rudolph v. Topsider Building Systems, Civ. No. 07-00225 SOM/BMK; ORDER DENYING PLAINTIFF CHARLES RUDOLPH'S MOTION TO ENFORCE ORDER AND JUDGMENT; ORDER DENYING PLAINTIFF CHARLES RUDOLPH'S MOTION TO HOLD DEFENDANT TOPSIDER BUILDING SYSTEMS IN CONTEMPT OF COURT